UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY RILEY, 03-B-1731,

                    Petitioner,

          -v-                                    09-CV-0676(MAT)
                                                 **ORDER**
MALCOLM CULLY, Superintendent,
Livingston Correctional Facility,

                    Respondent.
_____

## I.   **Introduction**

      Petitioner Timothy Riley ("petitioner"), who is represented by
counsel, has filed a petition for writ of habeas corpus pursuant to
28 U.S.C. § 2254 challenging his conviction in Monroe County
Supreme Court of rape in the first degree, rape in the second
degree, rape in the third degree (two counts), sexual abuse in the
second degree, sodomy in the second degree and sodomy in the third
degree following a bench trial before Justice Kenneth R. Fisher.
Petitioner was sentenced to indeterminate, concurrent sentences
totaling eight to sixteen years.

## II.  **Factual Background and Procedural History**

      Petitioner's conviction stems from a series of incidents that
occurred between 1996 and 1998, during which petitioner sexually
abused his step-daughter ("the victim"), when she was between the
ages of thirteen and fifteen years-old.

## A.    The Prosecution's Case

The victim and her mother testified at petitioner's non-jury trial that they, along with the victim's younger sister, moved into petitioner's house in the Town of Irondequoit in 1989.  A little over one year later, the victim recalled that petitioner began engaging in sexually inappropriate behavior when she was seven years-old. Testimony of the prior history of abuse, pre-dating the crimes in the indictment, were ruled relevant by the trial judge on the element of forcible compulsion for the count of rape in the first degree[1]. Trial Tr. 16, 142, 144-46; <u>see</u> Respondent's Appendix ("Appx.") B.

The victim recalled various situations where petitioner fondled her and engaged in various sexual acts against her will. In one instance, when the victim was fourteen years-old, petitioner drove her to a friend's house for an overnight stay, and, on the way there, demanded that she perform oral sex on him. The victim testified that as a result of this incident, she became aware of a mole on the underside of petitioner's penis. This fact was confirmed by his wife and petitioner himself. Trial Tr. 51, 183-85, 210, 414.

---

[1] The indictment charged petitioner with twelve counts of sexual crimes occurring between 1996 and 1998. The eleventh count charged petitioner with having sexual intercourse with the victim by forcible compulsion; the other counts of rape, sodomy, and sexual abuse were premised on the victim's lack of consent due to her age at the time of the offense. <u>See</u> Appx. B.

The victim described another incident, when she was fifteen, where petitioner became angry with her when she admitted she was having sex with her boyfriend. At that time, petitioner ordered the victim to remove her clothes, held her down with his body weight, and had sexual intercourse with her. According to her testimony, she could not push petitioner off of her because he was too heavy. T. 216-20.

**B.    The Defense's Case**

Defense counsel made extensive motions prior to trial, including a motion to restrict the <u>Molineux</u>[2] evidence of uncharged sexual crimes against the victim, and successfully obtained relevant portions of the victim's mental health records for use at trial. The defense's position was that the victim fabricated the allegations of abuse based on her contempt for petitioner and a history of mental illness. In support of this position, defense counsel elicited testimony from character witnesses that the victim did not have a reputation for honesty, and that the petitioner did not have a reputation for being sexually abusive or sexually violent. The defense also raised the victim's mental health issues and history of substance abuse. The victim, on cross-examination, acknowledged that she had been diagnosed as manic depressive and

---

[2] <u>See</u> <u>People v. Molineux</u>, 168 N.Y. 264 (1901) (admissibility of evidence of prior crimes to show motive, intent, absence of mistake or accident, common scheme or plan, or identity of person on trial) .

bipolar. Trial Tr. 44, 55-122, 238-336, 497, 499, 509-11, 516, 526, 573. Petitioner testified in his own behalf at trial.

### C.   Verdict and Sentencing

The trial court found petitioner guilty of seven of the twelve counts in the indictment. Trial Tr. 606. Petitioner was subsequently sentenced to eight to sixteen years imprisonment on the first-degree rape count, with other, lesser sentences to run concurrently. During that proceeding, the court commented that it did not find petitioner's trial testimony to be credible. Sentencing Tr. dated 10/16/2003 at 24.

### D.   Post-Conviction Relief

Through counsel, petitioner filed a motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. § 440.10 on the grounds that: (1) the trial court's Molineux ruling was an abuse of discretion, depriving petitioner of his rights to due process, a fair trial, and to a trial by jury; and (2) petitioner's counsel was constitutionally ineffective for failing to investigate and present evidence of a severe psychological disorder suffered by the victim, depriving him of his rights to present a defense and confront his accuser.  Appx. B. Following oral argument on the § 440.10 motion, the Monroe County Supreme Court denied petitioner's motion in its entirety. See Decision and Order, Monroe County Supreme Court (Affronti, J.), No. 02-0662, dated 2/2/2007

(Appx. F). Leave to appeal that decision was denied by the Appellate Division on April 17, 2007. Appx. I.

### E.    Direct Appeal

Petitioner then appealed his conviction to the Appellate Division, Fourth Department, on the following four grounds: (1) defense counsel's failure to inform the trial court of the victim's psychiatric condition deprived petitioner of his rights to the effective assistance of counsel, to present a defense, to confront his accuser, and to present evidence; (2) the trial court abused its discretion in allowing evidence of uncharged sexual crimes against the victim; (3) testimony regarding the appearance of petitioner's genitals should have been protected by the marital privilege under New York law; and (4) the trial court erred in allowing cross-examination of petitioner as to whether he rented or purchased adult videos. Appx. J. The Fourth Department unanimously affirmed the judgment of conviction. People v. Riley, 48 A.D.3d 1249 (4th Dept. 2008), lv. denied, 10 N.Y.3d 844 (2008).

### F.    Federal Habeas Proceeding

Petitioner filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court, raising the following grounds for relief: (1) defense counsel's failure to investigate the victim's psychiatric condition deprived petitioner of his rights to present a defense, to confront his accuser, to due process of law, and his right to the effective assistance of

counsel; (2) the trial court's erroneous <u>Molineux</u> ruling deprived petitioner of his constitutional rights to due process, a fair trial, and to a trial by jury. Petition ("Pet.") 7-51.

For the reasons that follow, the Court finds that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A.   General Principles Applicable to Federal Habeas Review

#### 1.   Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as

determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir.2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also

Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir.2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### 2. Exhaustion Requirement and Procedural Bar

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ...." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Att'y General of State of N.Y., 696 F.2d 186, 191 (2d Cir.1982) (en banc), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been fairly presented to the state courts." Jimenez v. Walker, 458 F.3d

130, 148-149 (2d Cir.2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir.1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice, i.e., that the petitioner is actually innocent. See Coleman v. Thompson, 501 U.S. 722, 750 (1991).

**B.   Merits of the Petition**

**1.   Ineffective Assistance of Trial Counsel**

Petitioner's first ground for relief, in sum and substance, alleges that trial counsel's use of the victim's psychiatric history was inadequate. Specifically, petitioner avers that hist attorney should have more fully explored the victim's diagnosis of

borderline personality disorder ("BPD") at trial, and should have

by requested her mental health records from Strong Memorial

Hospital, where she was presumably first diagnosed with BPD. Pet.,

7-33.

### a.   Factual Background

The record indicates that in the months preceding the trial,

petitioner sought a hearing pursuant to People v. Earel, 89 N.Y.2d

960 (1997) to determine whether the victim should have been

examined by a mental health professional. The trial court responded

to the request by deferring its decision, stating that the issue

would be "better brought up when we get closer to trial" and if the

defense were to persist in its request for that hearing, "I would

like to do it the week before." Hr'g Tr. dated 2/6/2003 at 5, 9-10.

It is inferred from the record that counsel ultimately did not

pursue the Earel hearing.

The record also reveals that the victim's borderline

personality disorder diagnosis was contained in the victim's

records from an outpatient mental health and substance abuse clinic

("the Confier Park records"). Those records were subpoenaed by

defense counsel, reviewed by the court in camera, and partially

redacted by the court prior to trial. The Conifer Park records were

released to the defense and made a court exhibit. Trial Tr. 5.

During cross-examination by defense counsel, the victim

acknowledged the diagnosis, and admitted to receiving treatment for drug and alcohol abuse. Trial Tr. 306.

### b.   State Court Disposition

Petitioner first raised this claim in his § 440.10 motion in state court, alleging that his attorney failed to investigate and utilize the information relating to the victim's psychiatric diagnosis. Following submissions and oral argument, the Monroe County Supreme Court rejected petitioner's claim, finding that petitioner was afforded meaningful representation:

> [D]efense counsel made appropriate pre-trial motions, vigorously cross-examined the victim, and called witnesses on Defendant's behalf, including several who testified that the victim had a reputation for dishonesty. Further, counsel made a forceful and cogent closing argument in which he referenced the victim's Borderline Personality Disorder as a primary basis for finding that she was not credible.

See Decision and Order, Monroe County Supreme Court (Affronti, J.), No. 02-0662, dated 2/2/2007 at 5.

Likewise, the Appellate Division denied petitioner's ineffective assistance claim on the merits:

> Although the record establishes that there was a pretrial discussion concerning defense counsel's request for an examination of the victim pursuant to People v. Earel . . . concerning her psychiatric condition, defense counsel ultimately chose not to pursue such a hearing. The record further establishes that defendant was not deprived of his right to present a defense or to confront his accuser, nor was he denied the right to effective assistance of counsel based on defense

> counsel's failure to pursue the <u>Earel</u> hearing.
> Defense counsel elicited testimony that the
> victim was not a truthful person, and he
> cross-examined the victim with respect to her
> numerous mental conditions. Additionally,
> Supreme Court, as the trier of fact, reviewed
> the victim's records from a mental health
> facility indicating that she was diagnosed
> with borderline personality disorder. We thus
> conclude that defendant failed to demonstrate
> the absence of a strategic or other legitimate
> explanation for defense counsel's decision not
> to pursue the <u>Earel</u> hearing.

<u>Riley</u>, 48 A.D.3d at 1250 (citations omitted).

### c.   Legal Principles

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." <u>Id.</u> To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689.  A reviewing court "must judge the reasonableness of counsel's challenged conduct on the

facts of the particular case, viewed as of the time of counsel's conduct." Id.

In general, trial counsel's strategic choices made after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland, 466 U.S. at 690-91.  Stated another way, trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691. "In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." Wiggins v. Smith, 539 U.S. 510, 527 (2003). Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court will usually conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under Strickland's prejudice prong. Pavel v. Hollins, 261 F.3d 210, 223 (2d Cir.2001) (finding that trial counsel was ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); Lindstadt v. Keane, 239 F.3d 191, 201 (2d Cir.2001) ("[D]efense counsel's failure to

consult an expert, failure to conduct any relevant research, and failure even to request copies of the underlying studies relied on by [the prosecution's medical expert] contributed significantly to his ineffectiveness.") (citations omitted).

In evaluating prejudice, the reviewing court must "look to the cumulative effect of *all* of counsel's unprofessional errors." Gersten v. Senkowski, 426 F.3d 558, 611 (2d Cir.2005) (citing Lindstadt, 239 F.3d at 204) ("We need not decide whether one or another or less than all of these four errors would suffice, because Strickland directs us to look at the totality of the evidence before the judge or jury,' keeping in mind that '[s]ome errors [ ] have ... a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture....' We therefore consider these errors in the aggregate.") (quoting Strickland, 466 U.S. at 695-96; other citations omitted) (emphasis supplied).

### d.   Application of Legal Precedent

The question before this Court is whether the state courts' resolution of petitioner's ineffective assistance of counsel claim was an unreasonable application of, or contrary to firmly established Supreme Court precedent as set forth by Strickland v. Washington, supra. As applied to the instant case, the relevant inquiry for the state courts was whether trial counsel's use (or lack thereof) of the victim's psychiatric history fell below an

objective standard of reasonableness, and whether that deficiency prejudiced petitioner's defense. Both the Monroe County Supreme Court and the Appellate Division rejected petitioner's ineffective assistance claim on the merits, and this Court finds that there is no reason to disturb those determinations.

Here, petitioner's defense was that the victim had fabricated allegations of abuse against petitioner. To this end, defense counsel utilized the information in the Conifer Park records regarding petitioner's BPD by thoroughly cross-examining the victim, as an excerpt from the trial transcript indicates:

Defense Counsel:    Now, you've also been diagnosed as manic depressive?

Witness:            Yes

Defense Counsel:    That's also called bipolar disorder?

Witness:            I think they vary a little bit, but they've said I was bipolar, also.

Defense Counsel:    Do you know when you were first treated for that?

Witness:            When I went into Conifer Park, they told me and he also said I had post-traumatic stress disorder and I was suicidal, and they started treating me then. I'm sorry. Not Conifer, it was Strong. They told me all this stuff in there. They started to diagnose me and further diagnosed me in Conifer, and I started treatment there.

Defense Counsel:    Prior to that, had you ever been treated for manic depression or bipolar disorder?

Witness:            Yes.

Defense Counsel:    When were you first treated for that?

| | |
|---|---|
| Witness: | Dr. Carroll Revak prescribed Paxil for me and I was put on that. |
| Defense Counsel: | And she's a psychiatrist, correct? |
| Witness: | Yes. |
| Defense Counsel: | And the drugs you were taking were Paxil and – |
| Witness: | Paxil. They had me on Ativan. They had me on another one, Trieptal I was on, and I'm off all of them now and I did - - now I'm on another one, Wellbutrine, for my depression. |
| Defense Counsel: | Now, were you also taking Trazodone? |
| Witness: | Yes, I was for sleeping. |
| Defense Counsel: | And Trileptal? |
| Witness: | Yes, that's the one I said before. |
| Defense Counsel: | What is Trileptal? |
| Witness: | It's a mood stabilizer because with my depression, my mood goes up and down. I get agitated very easily and have outbursts so it is to control my mood. |

Trial Tr. 306-07.

Counsel also incorporated the victim's psychiatric history into his closing argument, in which he emphasized that the victim not credible and had a propensity to lie:

> I would submit, [the victim] is just a liar. Not only is she bipolar, she has borderline personality disorder. That is uncontroverted once again. I submit that with that personality, you just don't know when she's going to be lying or when she's going to be embellishing. She can be off by a year, off by a few days, or she could be off by all the story.

16

Trial Tr. 571.

It is therefore evident from the record that counsel did possess information about the victim's BPD diagnosis, and was able to utilize that information in support of petitioner's defense. Unlike the cases relied upon by petitioner in his supporting memorandum, see Pet'r Mem. at 7-8, trial counsel in this case was not unfamiliar with the medical/psychological lexicon contained in the victim's records, nor was this a scenario where the prosecution introduced expert testimony which necessitated rebuttal. Cf. Gersten v. Senkowski, 426 F.3d 588 (2d Cir. 2005), Lindstadt v. Keane, 239 F.3d 191 (2d Cir.2001), Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001) (cases finding that trial counsel was ineffective for failing to consult medical experts in order to counter the prosecution's expert testimony regarding physical conditions indicative of sexual abuse). Notably, Lindstadt and Pavel both involved cases where the attorney's failure to call a medical expert was an error which, in combination with other errors, amounted to ineffective assistance. See Pavel, 261 F.3d at 218 (attorney labored under the assumption that the charges would be dismissed and did not prepare a defense; decision not to call expert witnesses was related to the goal of merely "avoiding work"); Lindstadt, 239 F.3d at 203 (where counsel failed to discover and expose that daughter gave wrong date for alleged abuse, failed to request unnamed studies relied on by prosecution's

expert, stated in opening that defendant would only testify if prosecution proved its case, and failed to argue relevance of third party testimony that defendant's wife tried to get him arrested before alleged abuse was reported). Such cumulative error is hardly present on this record. To the contrary, defense counsel vigorously cross-examined the prosecution's witnesses, made the appropriate motions, including one that successfully precluded expert testimony on the issue of "Child Abuse Stress Syndrome", and moved for a trial order of dismissal on the ground that the prosecution failed to prove the elements of the numerous crimes listed in the indictment. Trial Tr. 50, 340-41, 348-49. Notably, the trial court commended counsel's efforts on the record: "I appreciate, Mr. Muldoon, your advocacy on behalf of your client. You are a very fine attorney, but I reject what you say. Her testimony was credible, [petitioner's] was not." Sentencing Tr. dated 7/10/2006 at 13. In sum, viewing counsel's representation as a whole, see Kimmelman v. Morrison, 477 U.S. 365, 386 (1986), the Court cannot find that counsel's representation fell below the level of reasonable professional assistance.

Petitioner's specific argument that counsel should have informed the court about the potential links between BPD and a reason to fabricate the allegations of sexual abuse is unavailing because, as discussed above, that link was explored by defense counsel in his cross-examination and summation. Moreover,

petitioner does not demonstrate the absence of a strategic explanation for not subpoenaing the records from Strong Memorial Hospital and ultimately requesting the <u>Earel</u> hearing. It could very well be that counsel did not seek out the additional records because the content would serve to engender sympathy for the victim; the fact-finder could also draw the inference that the victim's psychiatric condition was a repercussion of years of sexual abuse.

Finally, petitioner does not show that he suffered prejudice by his attorney's failure to seek or obtain the victim's records of her psychiatric hospitalization at Strong Memorial Hospital. <u>See</u> Pet. at 14-15. Petitioner avers that, because those records were not subpoenaed, the trial court did not have the occasion to entertain an argument that an <u>Earel</u> hearing was required. Petitioner speculates that "the Court would have seriously considered an argument that [the victim's] medical records, as they relate to borderline personality disorder, could be reviewed by a defense psychiatrist." Pet., 31. Even if, as petitioner argues, the trial court would have found that an <u>Earel</u> hearing was required, he still falls short of establishing that the outcome of his trial would have been different but for counsel's failure to pursue the hearing and/or his failure to subpoena the records from Strong Memorial Hospital. Here, petitioner's attorney had access to and utilized the information relating to the victim's various mental

health conditions as provided in the Conifer Park records. It was therefore reasonable to find that petitioner did not suffer prejudice as a result of his attorney not seeking the additional records.

For the foregoing reasons, the state courts' resolution of petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of <u>Strickland v. Washington</u>, and this claim is dismissed.

### 2.   Improper <u>Molineux</u> Ruling

The second claim in the petition for habeas corpus alleges that the trial court's <u>Molineux</u> ruling deprived him of his constitutional rights to due process, a fair trial, and to a trial by jury. Pet., 34-51.

### a.   Factual Background

Petitioner was charged with twelve counts of sex crimes against the victim, eleven of which were premised on the victim's age at the time of the alleged crimes. On the eleventh count, the Grand Jury charged petitioner with first-degree rape, an act of intercourse by forcible compulsion. Appx. B at Ex. A.

Prior to trial, the prosecution sought to introduce evidence of acts of sexual abuse in the years preceding the crimes charged in the indictment on the basis that such evidence would be admissible under the <u>Molineux</u> theories of motive and intent, background information, and to demonstrate the victim's state of

mind. Appx. B at Ex. B. Following a review of the parties' written
submissions and oral arguments, the trial court rejected the
prosecution's argument that the proposed testimony was relevant to
establish motive, intent, and to provide background information
about the relationship between the victim and the petitioner. In a
written decision, the trial court ultimately determined that after
performing the "necessary balancing . . . the probative value of
the evidence [of prior acts of abuse and violence] on the issue of
forcible compulsion substantially outweighs its prejudicial effect,
particularly in light of the limiting instructions I will give to
the jury . . . ." Appx. B at Ex. E, p. 4. Following that decision,
petitioner's counsel advised him to waive the jury trial, which he
did. Appx. B at Ex. F.

### b.    State Court Disposition

Following his conviction, petitioner raised the <u>Molineux</u> issue
in his motion for *vacatur* in state court. The Monroe County Supreme
Court rejected petitioner's claim on procedural grounds. <u>See</u>
Decision and Order, Monroe County Supreme Court (Affronti, J.), No.
02-0662, dated 2/2/2007 at 2 (citing N.Y. Crim. Proc. L.
§ 440.10(1)(b), which requires dismissal of the motion where
sufficient facts exist in the court record to allow a thorough
review on direct appeal).

The Appellate Division reached the merits of petitioner's
claim of evidentiary error in holding that "[t]he court properly

allowed the People to present evidence of uncharged sexual offenses against the victim in order to establish the element of forcible compulsion with respect to the count of rape in the first degree." Riley, 48 A.D.3d at 1250.

### c.   Legal Principles

Because the United States Supreme Court has declined to determine whether use of uncharged crimes would violate due process, the Appellate Division's rejection of petitioner's argument cannot be considered an unreasonable application of clearly established Supreme Court precedent. See Jones v. Conway, 442 F.Supp.2d 113 (S.D.N.Y.2006) (citing Estelle v. McGuire, 502 U.S. 62, n.5 (1991). Moreover, "[a] decision to admit evidence of a criminal defendant's uncharged crimes or bad acts under Molineux constitutes an evidentiary ruling based on state law." Sierra v. Burge, 06 Civ. 14432, 2007 WL 4218926, *5 (S.D.N.Y. Nov. 30, 2007). As such, state court Molineux rulings are generally not cognizable on habeas review. See Roldan v. Artuz, 78 F.Supp.2d, 260, 276 (S.D.N.Y.2000). Rather, federal courts reviewing evidentiary matters may issue a writ of habeas corpus only if the petitioner demonstrates that the alleged evidentiary error violated a constitutional right and that the error "was so extremely unfair that its admission violates fundamental conceptions of justice." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir.1998) (internal quotation omitted). "For the erroneous admission of other unfairly

22

prejudicial evidence to amount to a denial of due process, the item must have been 'sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it.'" Id. (quoting Johnson v. Ross, 955 F.2d 178, 181 (2d Cir.1992) and citing Collins v. Scully, 755 F.2d 16, 19 (2d Cir.1985) (evidence must be "crucial, critical, highly significant")).

In general, evidence of uncharged crimes is inadmissible in a criminal trial due to the danger that the jurors will convict due to their perception that the defendant is predisposed to commit crime rather than determining the defendant's guilt or innocence based upon a consideration of the evidence regarding the charged offense. E.g., Molineux, 168 N.Y. at 291. However, in Molineux the New York Court of Appeals held that evidence of other crimes or bad acts may be admitted to the extent that it is relevant to an issue other than the defendant's criminal tendency, such as motive, intent, *modus operandi*, common scheme or plan, or identity. Id. at 293. Thus, New York law is "well settled that 'where the evidence of prior, uncharged criminal conduct has a bearing upon a material aspect of the People's case other than the accused's general propensity toward criminality . . . the probative value of the evidence justifies its admission, notwithstanding the potential for incidental prejudice[.]'" People v. Lee, 284 A.D.2d 412 (2nd Dept.2001) (citation omitted); see also People v. Cook, 93 N.Y.2d

840, 841 (1999) ("[E]vidence of a defendant's prior abusive behavior toward a complainant may be admissible to prove the element of forcible compulsion in a rape case . . . . This is true even though, as in this case, the defense is not consensual sex, but that the rape never occurred and that the complainant's allegation was a lie."); People v. Gainey, 4 A.D.3d 851 (4th Dept. 2004) (finding that the trial court properly determined that the probative value of testimony regarding sexual acts which predated those charged outweighed the potential for prejudice as it established the element of forcible compulsion in the counts charging first-degree rape and sodomy).

### d.   Application of Legal Precedent

Here, the victim's testimony on the issue of forcible compulsion was that, prior to the rape, the petitioner became angry with her because she told him that she was sexually active with her boyfriend. Trial Tr. 217. "He said that I was a dirty whore, and he called me a cunt, and told me to take all of my clothes off and he put be down on the bed, and he put all of his weight on top of me and he raped me." Id. 218. She further testified that she repeatedly told him no and "couldn't push him off." Id. 220. The evidence of prior sexual abuse perpetrated against the victim was therefore relevant to the issue of whether the element of forcible compulsion under New York case law, see supra.

Assuming, *arguendo*, the evidence regarding petitioner's prior bad acts was erroneously admitted, he cannot show that the admitted evidence, viewed objectively in light of the entire record, was sufficiently material to deprive him of his constitutional right to a fair trial. Because this was a bench trial, there was a diminished risk that admission of the evidence in question would have an unduly prejudicial effect on the outcome of the case. See Harris v. Rivera, 454 U.S. 339, 346 (*per curiam*) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). Habeas relief therefore does not lie for petitioner's claim of evidentiary error.

Finally, to the extent that petitioner attempts to argue that his waiver of a trial by jury was somehow coerced or involuntary due to the trial court's ruling, such a contention is unexhausted. In his appellate brief, petitioner argued that the Molineux ruling was made in error, and that the erroneous ruling could not be deemed  harmless because the ruling "might have affected [petitioner's] decision to waive a jury trial." Appx. J at 63. At no point in the state courts did petitioner argue that his waiver was not knowing, intelligent, or voluntary. See Adams v. United States ex rel. McCann, 317 U.S. 269, 275 (1942); McMahon v. Hodges, 382 F.3d 284, 289-90 & n.7 (2d Cir.2004). Accordingly, any constitutional claim petitioner seeks to raise with respect to his jury trial waiver is unexhausted. See,e.g.,  Gray v. Netherland,

25

518 U.S. 152, 162-63 (1996) ("it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a clam to a state court."). It is also subject to a procedural default. See Daye, 696 F.2d at 191. Because the issue was one for direct appeal, petitioner has no current, viable state process to raise it. See Grey, 933 F.2d at 120-21(citing former N.Y. Court R. § 500.10(a) (providing for only a single application for direct review); N.Y. Crim. Proc. L. § 440.10(2)(c) (barring collateral review if a claim could have, but unjustifiably was not raised on direct review). Petitioner has not alleged cause for the procedural default and resulting prejudice, nor does he allege that he is actually innocent. See Coleman, 501 U.S. at 749-50; Harris, 489 U.S. at 262. This component of petitioner's claim is therefore dismissed as well.

## IV. Conclusion

For the reasons stated above, Timothy Riley's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253 (c)(2), the court declines the issue of certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir.2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies

leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:     May 18, 2011
           Rochester, New York